# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| In re Claudia L. Ramirez, | Chapter 13 Proceedings |
| Debtor. | Case No: 2:23-bk-09249-DPC |
| | **UNDER ADVISEMENT ORDER RE DEBTOR'S OBJECTION TO AMENDED PROOF OF CLAIM FILED BY RIVER FLOW FUNDING LLC**[1] |
| | (Not for Publication – electronic Docketing ONLY) |

Before this Court is Claudia L. Ramirez's ("Debtor") Objection[2] to Amended Proof Claim No. 7 Filed by Creditor River Flow Funding, LLC ("River Flow"). The Court heard oral argument on the issue on October 7, 2024 and took this matter under advisement. The Court now hereby denies the Debtor's Objection based on the Court's analysis set forth below. In summary, the loan documents at issue do not automatically accelerate the Debtor's obligation nor did the September 9, 2009 proof of claim filed by River Flow's predecessor in Debtor's prior bankruptcy.

**I.    BACKGROUND**

On December 14, 2006, the Debtor executed a promissory note ("Note") secured by a second position deed of trust ("DOT") recorded on the Debtor's real property located

---

[1] This decision sets forth the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 9014 and Fed. R. Civ. P. 52.
[2] Docket Entry ("DE") 71.

at 7112 South 68th Avenue, Laveen, Arizona 85339 (the "Property").[3] The Note was payable to IndyMac Bank, F.S.B. ("IndyMac") in the amount of $67,042.00.[4] IndyMac also held a first position lien on the Property in the amount of $265,866.00.[5] On October 8, 2008, Jaime Ramirez and Debtor (collectively the "Ramirezes") filed a voluntary chapter 7 petition ("petition") as co-debtors ("First Bankruptcy Case").[6] The Ramirezes filled out the Statistical/Administrative Information section of the Petition, indicating that the "[d]ebtor estimates that, after any exempt property is excluded and administrative expenses paid, there will be no funds available for distribution to unsecured creditors."[7] In their Schedule C, the Ramirezes stated the Property had a then current value of $350,000. They claimed a $150,000 homestead exemption in the Property.[8] The Ramirezes' Schedule D indicated that the Property was subject to two IndyMac liens.[9] On December 12, 2008, IndyMac filed a Motion for Relief from the Automatic Stay ("Motion for Relief") to permit it to exercise its state law rights and remedies under the Note and DOT.[10] On July 27, 2009, following opposition from the Ramirezes and a hearing on the merits, the Court entered an order granting the Motion for Relief as to the Property.[11]

On June 3, 2009, the chapter 7 trustee in the First Bankruptcy Case reported that she held funds of the bankruptcy estate or expected to receive funds which should result in a dividend to creditors who were previously instructed not to file claims.[12] Following the trustee's report, on September 9, 2009, IndyMac filed a Proof of Claim based on the

---

[3] Claim 7-2 at page 10.
[4] Id.
[5] 2:08-bk-13882-RTB at DE 1.
[6] Id.
[7] Id.
[8] Id.
[9] Id.
[10] 2:08-bk-13882-RTB at DE 10.
[11] 2:08-bk-13882-RTB at DE 29.
[12] 2:08-bk-13882-RTB at DE 25.

Note and DOT for a total claim of $66,307.75 ("Prior POC").[13] The total claim amount was itemized as the principal balance of the loan.[14] On December 11, 2009, IndyMac executed an Assignment of Deed of Trust transferring the Note and the beneficial interest in the DOT to Deutsche Bank National Trust Company, Trustee and Supplemental Interest Trust Trustee, Home Equity Mortgage Loan Asset-Backed Trust Series INDS 2007-1 ("Deutsche").[15] Deutsche filed an Amended Proof of Claim that was identical to the Prior POC but included the relevant loan documents ("Prior Amended POC").[16] The chapter 7 trustee objected to the Prior Amended POC, arguing that creditor should look to its collateral for repayment.[17] The Court granted the chapter 7 trustee's objection based on Deutsche's failure to respond.[18] The First Bankruptcy Case was closed on April 8, 2010.[19] On August 22, 2019, Deutsche transferred the Note and its beneficial interest in the DOT to CTF Asset Management, LLC ("CTF").[20] In turn, on June 22, 2023, CTF transferred the Note and the beneficial interest in the DOT to River Flow.[21]

On December 27, 2023, Debtor filed the instant chapter 13 bankruptcy petition.[22] On February 7, 2024, based on the same Note and DOT held by IndyMac in the First Bankruptcy Case, River Flow filed a Proof of Claim asserting a secured claim against the Property in the amount of $110,834.86 ("Current POC").[23] The Note matured on January 1, 2022.[24] On August 9, 2024, River Flow filed a nearly identical Amended Proof of

---

[13] 2:08-bk-13882-RTB Claim 15-1
[14] *Id*.
[15] Claim 7-2 at page 27.
[16] 2:08-bk-13882-RTB Claim 15-2.
[17] 2:08-bk-13882-RTB at DE 33.
[18] 2:08-bk-13882-RTB at DE 36.
[19] 2:08-bk-13882-RTB at DE 45
[20] Claim 7-2 at page 29.
[21] Claim 7-2 at page 30.
[22] DE 1.
[23] Claim 7-1.
[24] *Id* at page 11.

Claim in order to include Deutsche's Assignment of Deed of Trust ("Current Amended POC").[25]

On August 22, 2024, the Debtor filed an objection to the Current Amended POC, arguing, in part, that the claim is barred by Arizona's six-year statute of limitations.[26] Specifically, the Debtor claims an acceleration of a debt triggers the running of the six-year statute of limitations, and that IndyMac's filing of the First POC in the First Bankruptcy Case was an acceleration of this debt.[27] The Debtor equated filing of the Prior POC for $66,307.55 to filing a suit to collect the entire debt.[28] Because the alleged acceleration occurred fifteen years ago, the Debtor argues the statute of limitations has run and $66,307.75 of the $110,834 claimed by River Flow is barred.[29] As a result, the Debtor argues $66,307.75 of the Current Amended POC must be denied.[30]

In its response, River Flow argued that there is no Ninth Circuit precedent establishing that filing a proof of a claim acts as an affirmative act by a creditor to accelerate a debt.[31] River Flow also argues that the Debtor's logic would be incongruent with the principle that secured creditors' liens survive a discharge unaffected, permitting a lender to retain the rights they have under the loan documents and take post-discharge action to enforce those rights.[32] Finally, River Flow asserts that it has not taken any affirmative action to accelerate the debt, and that the statute of limitations period was tolled by the Debtor's bankruptcy filings.[33] Oral Argument was held by the Court on October 7, 2024. The Court took this matter under advisement.[34]

---

[25] Claim 7-2.
[26] DE 59.
[27] *Id.*
[28] DE 85 at page 11.
[29] *Id.*
[30] DE 85 at page 12.
[31] DE 80 at page 13–15.
[32] *Id.*
[33] *Id.*
[34] DE 87.

## II. JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(B).

## III. ISSUES

1. Whether the debt at issue was accelerated under the terms of the Note or DOT.

2. Whether IndyMac's filing of the Prior POC or Deutsche's filing of the Prior Amended POC in the First Bankruptcy Case acted as an acceleration of such debt.

## IV. THE LAW

Arizona Revised Statute § 12-548(1) provides that "[a]n action for debt shall be commenced and prosecuted within six years after the cause of action accrues, and not afterward, if the indebtedness is evidenced by or founded on … [a] contract in writing that is executed in this state."[35] The six-year statute of limitations period applies where a creditor is "attempting to collect on a property interest secured by a Deed of Trust."[36] "When a creditor has the power to accelerate a debt, the six-year statute of limitations begins to run on the date the creditor exercises that power."[37]

An acceleration is defined as "[t]he advancing of a loan agreement's maturity date so that payment of the entire debt is due immediately."[38] "Under the majority view, notwithstanding a creditor's contractual ability to accelerate a debt without notice, it must undertake some affirmative act to make clear to the debtor it has accelerated the obligation."[39] Arizona Courts have deemed a variety of actions to be a sufficient

---

[35] A.R.S. § 12-548(1).
[36] *Andra R. Miller Designs LLC v. U.S. Bank NA*, 418 P.3d 1038, 1042 (Ariz. Ct. App. 2018).
[37] *Id* at 1043 (citing *Navy Fed. Credit Union v. Jones*, 187 Ariz. 493, 495 (App. 1996)).
[38] ACCELERATION, Black's Law Dictionary (12th ed. 2024).
[39] *Baseline Financial Services v. Madison*, 229 Ariz. 543, 544–545 (Ct. App. 2012)(citations omitted).

affirmative acts such as: repossession of a vehicle,[40] demanding full payment before all installments are due,[41] and filing suit to collect the entire debt.[42]

### V. ANALYSIS

#### A. Whether the Debt was Accelerated Under the Terms of the Note or DOT

We turn first to whether the debt was accelerated under the terms of the Note or DOT. The Note and the DOT were executed in the state of Arizona. Therefore, A.R.S. § 12-548(1) applies to this debt.[43] Both the Note and the DOT contain clauses addressing the holder's ability to accelerate the debt. The Note states that if the borrower fails to pay an overdue monthly payment amount by the date stated in the required written notice, the borrower is in default.[44] If the borrower is in default, the Note holder ***may*** require immediate full payment of the unpaid principal and all interest that is owed.[45] Likewise, Section 17 of the DOT states that should the Property or any legal or beneficial interest in the Property be sold or transferred without the Lender's prior consent, the Lender ***may*** require immediate payment in full of all sums secured by the DOT.[46]

Based on the language of both the Note and DOT, acceleration is available to the holder of this claim as a remedy on a discretionary basis. It is not automatically triggered by events of default. At oral argument, counsel for River Flow represented to the Court that, to the best of her knowledge, no holder of the Note has affirmatively accelerated the debt nor noticed an intent to accelerate. The Debtor has supplied no evidence to the contrary. In addition, the Court has failed to find any indication of an intent to accelerate

---

[40] *Id.*
[41] *Navy Fed. Credit Union v. Jones*, 187 Ariz. 493, 930 P.2d 1007 (Ct. App. 1996).
[42] *Frei v. Hamilton*, 123 Ariz. 544, 547, 601 P.2d 307, 310 (App.1979) (citation omitted).
[43] Claim 7-2 at pages 7, 20
[44] Claim 7-2 at page 7.
[45] *Id.*
[46] Claim 7-2 at page 17.

in the filed documents or the recorded hearings of the First Bankruptcy Case. This Court finds the debt has not been accelerated under the terms of the Note or DOT.

### B. Whether the Debt was Accelerated by the Filing of the Prior POC or Prior Amended POC

To exercise the right to accelerate a debt there must be an affirmative act that makes it clear the debt has been accelerated.[47] Filing a proof of claim, even for the full unpaid balance of the principal and other charges, does not necessarily show an intent to accelerate a debt.[48] While the Bankruptcy Code does not delineate the exact purpose for filing a proof of claim, courts have held that a proof of claim should be filed when "some purpose would be served."[49] Typically, filing a proof of claim enables a creditor to share in any potential distribution from the estate.[50] Federal Rule of Bankruptcy Procedure 3002(a) states, a "secured creditor…must file a proof of claim or interest for the claim or interest to be allowed, subject to particular exceptions." "A creditor who must file a claim pursuant to Rule 3002(a) will be unable to participate in any distribution in the case if there is a total failure to file."[51] A creditor may file also a proof of claim to make others aware of a claim and to allow for an opportunity to contest said claim.[52]

Creditors who file a proof of claim are afforded certain protections by the Bankruptcy Code. While it is possible that a creditor filing a proof of claim is demanding immediate payment of the entire outstanding debt, it is also possible the creditor is merely seeking the Bankruptcy Code's protections. Specifically, a creditor might file a proof of claim to

---

[47] *Baseline Financial Services v. Madison*, 229 Ariz. 543, 544–545 (Ct. App. 2012) (citations omitted).
[48] *Greenhouse Patio Apartments v. Aetna Life Ins. Co.*, 868 F.2d 153, 155–156 (5th Cir. 1989); *See also Ramanathan as Tr. of Ramanathan Fam. Tr. v. Bank of New York Mellon as Tr. for CWABS, Inc. Asset Backed Certificates, Series 2005-4*, No. 219CV02009APGEJY, 2021 WL 4486320 (D. Nev. Sept. 30, 2021).
[49] *In re Simmons*, 765 F.2d 547, 551 (5th Cir. 1985); *See also Kipp Flores Architects, L.L.C. v. Mid-Continent Cas. Co.*, 852 F.3d 405, 410–11 (5th Cir. 2017).
[50] 4 Collier on Bankruptcy ¶ 501.01(1) (Richard Levin & Henry J. Sommer eds., 16th ed.).
[51] 4 Collier on Bankruptcy ¶ 3002.01 (Richard Levin & Henry J. Sommer eds., 16th ed.).
[52] *Supra* Note 49.

assure it has an opportunity to participate in any potential distribution of the estate's non-exempt assets. The existence of multiple justifications for filing a proof of claim means the act of filing does not in and of itself unequivocally communicate that the creditor is accelerating the debt.

Here, the Petition in the First Bankruptcy Case indicated the Ramirezes believed it was a "no asset case."[53] Despite initial instructions to refrain from filing a proof of claim, the chapter 7 trustee reported that she had come into possession of estate funds or would be in possession of estate funds which would facilitate a distribution.[54] From IndyMac's perspective, there was a possibility it could participate in a distribution of the non-exempt estate assets. As a result, following the chapter 7 trustee' report to the Court, IndyMac filed the Prior POC.[55] Deutsche, following the transfer to of the Note and the DOT, filed the nearly identical Prior Amended POC.[56] Based on this sequence of events, it is at least possible that IndyMac filed the Prior POC simply to ensure it received its share in the distribution of the non-exempt assets. River Flow declared this was the justification for the Prior POC.[57] If IndyMac or Deutsche were trying to accelerate the unmatured obligation owed by the Debtor, its intention was not made clear by the filing of the Prior POC or Prior Amended POC, respectively. This Court finds the lack of clarity as to the creditors' intention behind these filings means the creditors' filings did not clearly accelerate the debt. Absent the clear intent to accelerate this debt, the Court now finds the filing of the Prior POC and the Prior Amended POC did not accelerate the debt.

---

[53] 2:08-bk-13882-RTB at DE 1.
[54] 2:08-bk-13882-RTB at DE 25.
[55] *Supra* Note 12.
[56] *Supra* Note 15.
[57] DE 80, at page 3.

## VI. CONCLUSION

The Court finds that, at no point, has a holder of the Note and DOT and the accelerated the debt under the terms of the Note or DOT. The Court further finds IndyMac's filing of the Prior POC and Deutsche's filing of the Prior Amended POC did not act as an acceleration of the obligation owed by Debtor. Debtor's Objection to the Current Amended POC filed by River Flow is denied.

**ORDERED**

**DATED AND SIGNED ABOVE.**

**To be Noticed through the BNC to:**
Interested Parties