SO ORDERED.

Dated: December 23, 2024

Daniel P. Collins, Bankruptcy Judge
_____

UNITED STATES BANKRUPTCY COURT

DISTRICT OF ARIZONA

| | | |
|---|---|---|
| In re Claudia L. Ramirez,<br><br>Debtor. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>(<br>)<br>)<br>) | Chapter 13 Proceedings<br><br>Case No: 2:23-bk-09249-DPC<br><br>**AMENDED UNDER ADVISEMENT ORDER RE DEBTOR'S OBJECTION TO AMENDED PROOF OF CLAIM FILED BY RIVER FLOW FUNDING LLC**[1]<br><br>(Not for Publication – electronic Docketing ONLY) |

Before this Court is Claudia L. Ramirez's ("Debtor") Objection[2] ("Objection") to Amended Proof Claim No. 7 Filed by Creditor River Flow Funding, LLC ("River Flow"). The Court heard oral argument on the issue on October 7, 2024, and took this matter under advisement. On November 15, 2024, the Court issued an Under Advisement Order,[3] denying the Debtor's Objection. The Court held that the loan documents at issue do not automatically accelerate the Debtor's obligation upon Debtor's payment defaults nor was that debt accelerated by the September 9, 2009, proof of claim filed by River Flow's predecessor in Debtor's prior bankruptcy.

The Debtor filed a Motion to Alter/Amend Judgment Or Make Additional Findings ("Motion for Reconsideration") requesting that the Court specifically address

---

[1] This decision sets forth the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 9014 and Fed. R. Civ. P. 52.
[2] Docket Entry ("DE") 71.
[3] DE 90.

her res judicata[4] argument raised during the oral argument held on October 7, 2024.[5] While the Court (and River Flow) believe it unmistakenly rejected Debtor's claim preclusion arguments at oral argument on October 7, 2024, and again in its Under Advisement Order, the Court nonetheless now issues its Amended Under Advisement, again denying the Debtor's Objection and unequivocally rejecting Debtor's claim preclusion arguments.

I. BACKGROUND

On December 14, 2006, the Debtor executed a promissory note ("Note") secured by a second position deed of trust ("DOT") recorded on the Debtor's real property located at 7112 South 68th Avenue, Laveen, Arizona 85339 (the "Property").[6] The Note was payable to IndyMac Bank, F.S.B. ("IndyMac") in the amount of $67,042.00.[7] IndyMac also held a first position lien (the "First Lien") on the Property in the amount of $265,866.00.[8]

On October 8, 2008, Jaime Ramirez and Debtor (collectively the "Ramirezes") filed a voluntary chapter 7 petition ("petition") as co-debtors ("Prior Bankruptcy Case").[9] The Ramirezes filled out the Statistical/Administrative Information section of the Petition, indicating that the "[d]ebtor estimates that, after any exempt property is excluded and administrative expenses paid, there will be no funds available for distribution to unsecured creditors."[10] In their Schedule C, the Ramirezes stated the Property had a then current value of $350,000. They claimed a $150,000 homestead exemption in the

---

[4] The term "res judicata" has generally been supplanted by the more current (and more descriptive) term "claim preclusion" so this Court shall hereafter reference claim preclusion when addressing Debtor's "res judicata" arguments. *See* Kevin M. Lewis et al., *Recent Developments in Estoppel and Preclusion Doctrines in Consumer Bankruptcy Cases; Volume II of II: Preclusion*, 67 OKLA. L. REV. 733 (2015).
[5] DE 92.
[6] Claim 7-2 at 10.
[7] *Id*.
[8] 2:08-bk-13882-RTB at DE 1.
[9] *Id*.
[10] *Id*.

Property.[11] The Ramirezes' Schedule D indicated that the Property was subject to two IndyMac liens.[12] On December 12, 2008, IndyMac filed a Motion for Relief from the Automatic Stay ("Motion for Relief") to permit it to exercise its state law rights and remedies under the First Lien.[13] On July 27, 2009, following opposition from the Ramirezes and a hearing on the merits, the Court entered an order granting the Motion for Relief as to the Property.[14]

On June 3, 2009, the chapter 7 trustee, Maureen Gaughan ("Trustee Gaughan"), in the Prior Bankruptcy Case reported that she held funds of the bankruptcy estate or expected to receive funds which should result in a dividend to creditors who were previously instructed not to file claims.[15] Following Trustee Gaughan's report, on September 9, 2009, IndyMac filed a Proof of Claim based on the Note and DOT for a total claim of $66,307.75 ("Prior POC").[16] The total claim amount was itemized as the principal balance of the loan.[17] On December 11, 2009, IndyMac executed an Assignment of Deed of Trust transferring the Note and the beneficial interest in the DOT to Deutsche Bank National Trust Company, Trustee and Supplemental Interest Trust Trustee, Home Equity Mortgage Loan Asset-Backed Trust Series INDS 2007-1 ("Deutsche").[18] Deutsche filed an Amended Proof of Claim that was identical to the Prior POC but included the relevant loan documents ("Prior Amended POC").[19] Trustee Gaughan objected to the Prior Amended POC ("Trustee Objection"), arguing that Deutsche should look to its collateral for repayment.[20] The Court issued an Order on Trustee's Objection to Claim No. 15 ("Disallowance Order"), sustaining Trustee

---

[11] *Id*.
[12] *Id*.
[13] 2:08-bk-13882-RTB at DE 10.
[14] 2:08-bk-13882-RTB at DE 29.
[15] 2:08-bk-13882-RTB at DE 25.
[16] 2:08-bk-13882-RTB Claim 15-1.
[17] *Id*.
[18] Claim 7-2 at 27.
[19] 2:08-bk-13882-RTB Claim 15-2.
[20] 2:08-bk-13882-RTB at DE 33.

Gaughan's claim objection based on Deutsche's failure to respond.[21] The First Bankruptcy Case was closed on April 8, 2010.[22]

On August 22, 2019, Deutsche transferred the Note and its beneficial interest in the DOT to CTF Asset Management, LLC ("CTF").[23] In turn, on June 22, 2023, CTF transferred the Note and the beneficial interest in the DOT to River Flow.[24]

On December 27, 2023, Debtor filed the instant chapter 13 bankruptcy petition ("Current Bankruptcy Case").[25] On February 7, 2024, based on the same Note and DOT held by IndyMac in the Prior Bankruptcy Case, River Flow filed a Proof of Claim asserting a secured claim against the Property in the amount of $110,834.86 ("Current POC").[26] The Note matured on January 1, 2022.[27] On August 9, 2024, River Flow filed a nearly identical Amended Proof of Claim in order to include Deutsche's Assignment of Deed of Trust ("Current Amended POC").[28]

On August 22, 2024, the Debtor filed her Objection to the Current Amended POC, arguing that the claim is barred by Arizona's six-year statute of limitations and through the application of the doctrine of claim preclusion.[29] The Debtor claims an acceleration of a debt triggers the running of the six-year statute of limitations, and that IndyMac's filing of the First POC in the Prior Bankruptcy Case was an acceleration of this debt.[30] The Debtor equated filing of the Prior POC for $66,307.55 to filing a suit to collect the entire debt.[31] Because the alleged acceleration occurred fifteen years ago, the Debtor argues the statute of limitations has run to the point that $66,307.75 of the $110,834

---

[21] 2:08-bk-13882-RTB at DE 36.
[22] 2:08-bk-13882-RTB at DE 45.
[23] Claim 7-2 at 29.
[24] Claim 7-2 at 30.
[25] DE 1.
[26] Claim 7-1.
[27] *Id* at 11.
[28] Claim 7-2.
[29] DE 59.
[30] *Id.*
[31] DE 85 at 11.

claimed by River Flow is barred.[32] Debtor argues $66,307.75 of the Current Amended POC must be denied.[33] In addition, Debtor argues that the Disallowance Order in the Prior Bankruptcy Case was a final judgment as to the validity of the claim, so that ruling is binding on the Current Amended POC.[34] Therefore, Debtor contends River Flow's proof of claim and lien is barred by the doctrine of claim preclusion.[35]

In its response, River Flow argued that there is no Ninth Circuit precedent establishing that filing a proof of a claim acts as an affirmative act by a creditor to accelerate a debt.[36] River Flow also argues that the Debtor's logic would be incongruent with the principle that secured creditors' liens survive a discharge unaffected, permitting a lender to retain the rights they have under the loan documents and take post-discharge action to enforce those rights.[37] Also, River Flow asserts that it has not taken any affirmative action to accelerate the debt, and that the statute of limitations period was tolled by the Debtor's bankruptcy filings.[38] As to Debtor's claim preclusion argument, River Flow argues that there is no identity of claims or privity of the parties, and, therefore, claim preclusion does not apply to the Current Amended POC.[39] Oral Argument was held by the Court on October 7, 2024.[40] The Court entered its Under Advisement Order on November 15, 2024, after which Debtor filed her Motion for Reconsideration[41] and River Flow filed its Amended Opposition ("Response").[42] Oral argument on the Motion for Reconsideration was held on December 16, 2024.

---

[32] *Id*.
[33] DE 85 at 12.
[34] DE 85 at 2–11.
[35] *Id*.
[36] DE 80 at 13–15.
[37] *Id*.
[38] *Id*.
[39] *Id* at 4–7.
[40] DE 87.
[41] DE 92.
[42] DE 96. Because the Court found that the Trustee Objection and Disallowance Order alone were sufficient to support its conclusion, the Court has not considered or relied upon the Declaration of Trustee Gaughan attached to River Flow's Response.

## II. JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(B).

## III. ISSUES

1. Whether the debt at issue was accelerated under the terms of the Note or DOT.

2. Whether IndyMac's filing of the Prior POC or Deutsche's filing of the Prior Amended POC in the Prior Bankruptcy Case acted as an acceleration of such debt.

3. Whether River Flow's claim against the estate in the Current Bankruptcy Case is barred.

4. Whether the proceedings in the Prior Bankruptcy Case voided River Flow's lien on the Property.

## IV. THE LAW

### A. Acceleration

Arizona Revised Statute § 12-548(1) provides that "[a]n action for debt shall be commenced and prosecuted within six years after the cause of action accrues, and not afterward, if the indebtedness is evidenced by or founded on … [a] contract in writing that is executed in this state."[43] The six-year statute of limitations period applies where a creditor is "attempting to collect on a property interest secured by a Deed of Trust."[44] "When a creditor has the power to accelerate a debt, the six-year statute of limitations begins to run on the date the creditor exercises that power."[45]

---

[43] A.R.S. § 12-548(1).
[44] *Andra R. Miller Designs LLC v. U.S. Bank NA*, 418 P.3d 1038, 1042 (Ariz. Ct. App. 2018).
[45] *Id* at 1043 (citing *Navy Fed. Credit Union v. Jones*, 187 Ariz. 493, 495 (App. 1996)).

An acceleration is defined as "[t]he advancing of a loan agreement's maturity date so that payment of the entire debt is due immediately."[46] "Under the majority view, notwithstanding a creditor's contractual ability to accelerate a debt without notice, it must undertake some affirmative act to make clear to the debtor it has accelerated the obligation."[47] Arizona Courts have deemed a variety of actions to be a sufficient affirmative acts such as: repossession of a vehicle,[48] demanding full payment before all installments are due,[49] and filing suit to collect the entire debt.[50]

## B. Effect of a Discharge

The effect of a debtor's discharge is described in 11 U.S.C. § 727(b), which states:

> Except as provided in section 523 of this title, a discharge under [11 U.S.C. §727(a)] discharges the debtor from all debts that arose before the date of the order for relief under this chapter, and any liability on a claim that is determined under section 502 of this title as if such claim had arisen before the commencement of the case, whether or not a proof of claim based on any such debt or liability is filed under section 501 of this title, and whether or not a claim based on any such debt or liability is allowed under section 502 of this title. [51]

## C. Avoidance of a Lien

The Bankruptcy Code prescribes rules governing the avoidance of liens that secure disallowed claims. 11 U.S.C. § 506(d) provides that "[t]o the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void […]"[52] There are two exceptions to this rule: § 506(d) does not avoid a lien if (1) the claim was disallowed only under §§ 502(b)(5) or § 502(e), or (2) the claim is not an allowed secured

---

[46] ACCELERATION, Black's Law Dictionary (12th ed. 2024).
[47] *Baseline Financial Services v. Madison*, 229 Ariz. 543, 544–545 (Ct. App. 2012) (citations omitted).
[48] *Id*.
[49] *Navy Fed. Credit Union v. Jones*, 187 Ariz. 493, 930 P.2d 1007 (Ct. App. 1996).
[50] *Frei v. Hamilton*, 123 Ariz. 544, 547, 601 P.2d 307, 310 (App.1979) (citation omitted).
[51] 11 U.S.C. § 727(b).
[52] 11 U.S.C. § 506(d).

claim under section 501 due only to the failure to file a proof of claim.[53] Included in the lists of proceedings that are considered adversary proceedings is a "proceeding to determine the validity, priority, or extent of a lien or other interest in property, but not a proceeding under Rule 3012 or Rule 4003(d)."[54]

## V. ANALYSIS

### A. Whether the Debt was Accelerated Under the Terms of the Note or DOT

We turn first to whether the Debtor's obligation under the Note was accelerated under the terms of the Note or DOT. The Note and the DOT were executed in the state of Arizona. Therefore, A.R.S. § 12-548(1) applies to this debt.[55] Both the Note and the DOT contain clauses addressing the holder's ability to accelerate the debt. The Note states that if the borrower fails to pay an overdue monthly payment amount by the date stated in the required written notice, the borrower is in default.[56] If the borrower is in default, the Note holder *may* require immediate full payment of the unpaid principal and all interest that is owed.[57] Likewise, Section 17 of the DOT states that should the Property or any legal or beneficial interest in the Property be sold or transferred without the Lender's prior consent, the Lender *may* require immediate payment in full of all sums secured by the DOT.[58]

Based on the language of both the Note and DOT, upon Debtor's payment default, acceleration is available to the holder of the Note as a remedy on a discretionary basis. Acceleration is not automatically triggered by events of default. At oral argument,

---

[53] 11 U.S.C. § 727(b).
[54] Fed. R. Bankr. P. 7001(2).
[55] Claim 7-2 at 7, 20.
[56] Claim 7-2 at 7.
[57] *Id*.
[58] Claim 7-2 at 17.

counsel for River Flow represented to the Court that, to the best of her knowledge, no holder of the Note has affirmatively accelerated the debt nor noticed an intent to accelerate. The Debtor has supplied no evidence to the contrary. In addition, the Court has failed to find any indication of an intent to accelerate in the filed documents or the recorded hearings in the Prior Bankruptcy Case. This Court finds the Debtor's obligation at issue has not been accelerated under the terms of the Note or DOT.

### B. Whether the Debt was Accelerated by the Filing of the Prior POC or Prior Amended POC

To exercise the right to accelerate a debt there must be an affirmative act that makes it clear the debt has been accelerated.[59] Filing a proof of claim, even for the full unpaid balance of the principal and other charges, does not necessarily show an intent to accelerate a debt.[60] While the Bankruptcy Code does not delineate the exact purpose for filing a proof of claim, courts have held that a proof of claim should be filed when "some purpose would be served."[61] Typically, filing a proof of claim enables a creditor to share in any potential distribution from the estate.[62] Federal Rule of Bankruptcy Procedure 3002(a) states, a "secured creditor…must file a proof of claim or interest for the claim or interest to be allowed, subject to particular exceptions." "A creditor who must file a claim pursuant to Rule 3002(a) will be unable to participate in any distribution in the case if there is a total failure to file."[63] A creditor may file also a proof of claim to make others aware of a claim and to allow for an opportunity to contest said claim.[64]

---

[59] *Baseline Financial Services v. Madison*, 229 Ariz. 543, 544–545 (Ct. App. 2012) (citations omitted).
[60] *Greenhouse Patio Apartments v. Aetna Life Ins. Co.*, 868 F.2d 153, 155–156 (5th Cir. 1989); *See also Ramanathan as Tr. of Ramanathan Fam. Tr. v. Bank of New York Mellon as Tr. for CWABS, Inc. Asset Backed Certificates, Series 2005-4*, No. 219CV02009APGEJY, 2021 WL 4486320 (D. Nev. Sept. 30, 2021).
[61] *In re Simmons*, 765 F.2d 547, 551 (5th Cir. 1985); *See also Kipp Flores Architects, L.L.C. v. Mid-Continent Cas. Co.*, 852 F.3d 405, 410–11 (5th Cir. 2017).
[62] 4 Collier on Bankruptcy ¶ 501.01(1) (Richard Levin & Henry J. Sommer eds., 16th ed.).
[63] 4 Collier on Bankruptcy ¶ 3002.01 (Richard Levin & Henry J. Sommer eds., 16th ed.).
[64] *Supra* Note 62.

Creditors who file a proof of claim are afforded certain protections by the Bankruptcy Code. While it is possible that a creditor filing a proof of claim is demanding immediate payment of the entire outstanding debt, it is also possible the creditor is merely seeking the Bankruptcy Code's protections. Specifically, a creditor might file a proof of claim to assure it has an opportunity to participate in any potential distribution of the estate's non-exempt assets. The existence of multiple justifications for filing a proof of claim means the act of filing a proof of claim, does not, in and of itself, unequivocally communicate that the creditor is accelerating the debt.

Here, the Petition in the Prior Bankruptcy Case indicated the Ramirezes believed it was a "no asset case."[65] Despite initial instructions to refrain from filing a proof of claim, Trustee Gaughan reported that she had come into possession of estate funds or would be in possession of estate funds which would facilitate a distribution.[66] From IndyMac's perspective, there was a possibility it could participate in a distribution of the non-exempt estate assets. As a result, following Trustee Gaughan's report to the Court, IndyMac filed the Prior POC.[67] Deutsche, following the transfer to it of the Note and the DOT, filed the nearly identical Prior Amended POC.[68] Based on this sequence of events, it is at least possible that IndyMac filed the Prior POC simply to ensure it received its share in the distribution of the non-exempt assets. River Flow declared this was the justification for filing the Prior POC.[69] If IndyMac or Deutsche were trying to accelerate the unmatured obligation owed by the Debtor, its intention was not made clear by the filing of the Prior POC or Prior Amended POC, respectively. This Court finds the lack of clarity as to the creditors' intention behind these filings means the creditors' filings did not clearly

---

[65] 2:08-bk-13882-RTB at DE 1.
[66] 2:08-bk-13882-RTB at DE 25.
[67] *Supra* Note 16.
[68] *Supra* Note 19.
[69] DE 80 at 3.

accelerate the debt. Absent clear intent to accelerate this debt, the Court now finds the filing of the Prior POC and the Prior Amended POC did not accelerate the debt.

### C. Whether River Flow's claim against the estate in the Current Bankruptcy Case is barred.

A debtor who is discharged under § 727(a) is granted a discharge from all debts that arose prior to the date of the order of relief, whether or not the claim is allowed under § 502.[70] The one exception is where a debt is excepted from discharge under 11 U.S.C. § 523. Here, the Note and DOT were entered into by the Debtor and River Flow's predecessor in interest on December 14, 2006.[71] The debt, therefore, arose before the filing of the Prior Bankruptcy Case. The subject debt was never determined to be excepted from discharge under 11 U.S.C. § 523. Therefore, when the discharge order was entered in the Prior Bankruptcy Case,[72] the Debtor shed any personal liability for the debt created by the Note. Consequently, in the Current Bankruptcy Case, River Flow does not have a valid claim against either the <u>Debtor</u> or the <u>bankruptcy estate</u> in the Current Bankruptcy Case.

### D. Whether the proceedings in the Prior Bankruptcy Case voided River Flow's lien on the Property.

Although the Disallowance Order in the Prior Bankruptcy Case barred that claim against the prior bankruptcy estate, it did not void the lien against the Property. "A secured creditor has the option of enforcing its claim against the debtor in two ways: (1) against the debtor personally (*in personam*), or (2) against the collateral (*in rem*)."[73] The

---

[70] 6 Collier on Bankruptcy P 727.15 (16th 2024).
[71] *Supra* Note 6 at 7–26.
[72] 2:08-bk-13882-RTB at DE 16.
[73] *Lane v. Bank of N.Y. Mellon (In re Lane)*, 959 F.3d 1226, 1229 (9th Cir. 2020) (citing *In re Blendheim*, 803 F.3d 477, 486 (9th Cir. 2015)).

proceedings within a bankruptcy case can affect the creditor's enforcement rights. The Debtor's discharge in the Prior Bankruptcy Case bars any claim by River Flow against the Debtor personally. The remaining question is whether enforcement against the Property was barred by proceedings in the Prior Bankruptcy Case.

As to the discharge in the Prior Bankruptcy Case, it is well settled law that a valid lien passes through bankruptcy unaffected.[74] A debtor's discharge alone will not affect the validity of a secured creditor's lien. The discharge granted in the Prior Bankruptcy Case did not void the lien on the Property.

The Debtor invokes *Seigel v. Federal Home Loan Mortgage Company*[75] in relation to the Disallowance Order. While the Court agrees that *Seigel* stands for the proposition that the disallowance or allowance of a claim is a final judgment and furnishes the basis for claim preclusion,[76] application of claim preclusion in the Current Bankruptcy Case does not invalidate River Flow's lien against the Property. The Disallowance Order bars River Flow from asserting a claim against the bankruptcy estate in the Current Bankruptcy Case, but it does not void the lien against the Property securing the subject debt. 11 U.S.C. § 506(d) addresses the situation in which a lien would be voided. Federal Rules of Bankruptcy Procedure Rule 7001(2) dictates that a proceeding to determine the validity of a lien must be commenced in an adversary proceeding, not a contested matter.[77] In the Prior Bankruptcy Case, the Debtor did not commence an adversary proceeding under § 506(d). In the Current Bankruptcy Case, the Debtor has not brought an adversary proceeding under § 506(d). Absent the successful prosecution of an adversary proceeding to avoid the subject lien, River Flow's lien on the Property

---

[74] *Dewsnup v. Timm*, 502 U.S. 410, 417, 112 S. Ct. 773, 778 (1992).
[75] 143 F.3d 525 (9th Cir. 1998).
[76] *Id* at 529 (citing *United States v. Coast Wineries, Inc.*, 131 F.2d 643, 648 (9th Cir. 1942).
[77] *Supra* Note 54; *See* 10 Collier on Bankruptcy P 7001.01 (16th 2024).

remains. River Flow may enforce its lien against the Property (but not a claim against the Debtor or the Estate of the Current Bankruptcy Case).

The Court's inquiry can end here. However, assuming that an adversary proceeding need not be initiated or that an adversary proceeding is hereafter initiated, absent other yet undisclosed facts, River Flow's lien against the Property is still valid. § 506(d) states that a lien securing a claim that is not an allowed secured claim is void. Here, the Trustee Objection stated, "[s]aid claimant asserts a lien on certain property of the debtor's estate and said claimant has or should have looked to said property for payment of the debt thereby secured."[78] In effect the stated grounds for disallowance of the subject claim validate the secured portion of the Prior Amended POC. The Trustee Objection was solely aimed at preventing the holder of the subject claim from participating in a distribution from the estate of the Prior Bankruptcy Case. Judge Baum's Disallowance Order sustaining the Trustee Objection disallowed only the unsecured portion of the subject claim, disallowing the right of the holder of that claim to any distribution from the estate of the Prior Bankruptcy Case. Judge Baum's Disallowance Order did not disallow the secured portion of the Prior Amended Proof of Claim.

Even if that was not the case, Ninth Circuit jurisprudence supports River Flow retaining its lien on the Property under the circumstances of this case. In *Blendheim*[79], the Ninth Circuit Court of Appeals found the Blendheims' objected to the HSBC Bank USA, N.A.'s ("HSBC") proof of claim, arguing that HSBC failed to attach a copy of the promissory note and that the copy of the promissory note they received bared a forged signature.[80] The court further found that the bankruptcy court entered default judgment, disallowing HSBC's claim.[81] The Ninth Circuit held that if a secured claim is disallowed, under §506(d) and consistent with *Dewsnup v. Timm*, the claim's associated

---

[78] *Supra* Note 20.
[79] *HSBC Bank USA, N.A. v. Blendheim (In re Blendheim)*, 803 F.3d 477 (9th Cir. 2015).
[80] *Id* at 481.
[81] *Id*.

lien is void.[82] The court explained that because the case does not concern a late-filed or non-filed claim, § 506(d)(2)'s exception does not apply.[83]

To be sure, this Court is bound by the decision in *Blendheim*. The facts here bear similarities to those in *Blendheim*. Deutsche filed a proof of claim[84], Trustee Gaughan objected[85], Deutsche did not contest the objection, and Judge Baum entered default judgment disallowing the claim.[86] However, these factual similarities are only superficial. Importantly, the claim objection in *Blendheim* argued that HSBC failed to provide a copy of the promissory note and that the copy previously provided bore a forged signature.[87] Consequently, when the bankruptcy court sustained the Blendheims' claim objection, it found that the note giving rise to the claim was invalid. Here, however, the Trustee Objection directed Deutsche to seek repayment of its claim via its secured position against the Property.[88] In issuing the Disallowance Order, Judge Baum implicitly found that Deutsche's lien was valid. While the case at bar is distinguishable from *Blendheim*, the Court finds the Ninth Circuit's subsequent decision in *Lane v. Bank of N.Y. Mellon (In re Lane)*[89] more applicable.

In *Lane*, the 9th Circuit Court of Appeals found that the debtor objected to a claim filed by the Bank of New York Mellon ("BONY") alleging that BONY's claim failed to establish standing and failed to establish that BONY was the party entitled to enforce payment on the claim.[90] Due to BONY's failure to file a timely response, the bankruptcy court signed an order disallowing the claim in its entirety.[91] The Ninth Circuit held that the claim-disallowance order did not have the effect of rendering any lien securing the

---

[82] *Supra* Note 79 at 490.
[83] *Supra* Note 79 at 491.
[84] *Supra* Note 19.
[85] *Supra* Note 20.
[86] *Supra* Note 21.
[87] *Supra* Note 80.
[88] *Supra* Note 20.
[89] *Lane v. Bank of N.Y. Mellon (In re Lane)*, 959 F.3d 1226 (9th Cir. 2020).
[90] *Id* at 1228.
[91] *Id.*

Case 2:23-bk-09249-DPC    Doc 100    Filed 12/23/24    Entered 12/23/24 14:30:03    Desc
Main Document    Page 14 of 16

note void under § 506(d).[92] The court reasoned that, when the bankruptcy court entered its claim disallowance order, the bankruptcy court found that BONY was not the party entitled to enforce the claim, but it did not find that the note or any lien securing that note was invalid or otherwise unenforceable.[93] Because the factual record created by the claim disallowance order indicated that the entity entitled to enforce the note did not file a proof of claim, the claim fell under the § 506(d)(2) exception.[94]

Here, like the order in *Lane*, Judge Baum's Disallowance Order from the Prior Bankruptcy Case did not find that the lien securing the Note was invalid or otherwise unenforceable. In fact, the Trustee Gaughan's objection affirmatively validated the claim stating, "claimant has or should have looked to said property for payment."[95] The factual record created by the Disallowance Order designated Deutsche as both a valid secured creditor and as a claimant whose claim was disallowed. It is clear that Trustee Gaughan implicitly intended to allow the subject lien to pass through the Prior Bankruptcy Case unaffected. In effect, the Disallowance Order placed Deutsche in the position of a secured creditor who did not file a proof of claim. Therefore, River Flow's lien claim falls under the § 506(d)(2) exception. River Flow still possesses a valid lien that can be exercised against the Property. Debtor's claim preclusion arguments are hereby rejected.

## VI. CONCLUSION

The Court finds that, at no point, has a holder of the Note and DOT and the accelerated the debt under the terms of the Note or DOT. The Court further finds IndyMac's filing of the Prior POC and Deutsche's filing of the Prior Amended POC did not act as an acceleration of the obligation owed by Debtor. Moreover, the Trustee

---

[92] *Supra* Note 89 at 1231.
[93] *Id*.
[94] *Id.*
[95] *Supra* Note 20.

Objection to that claim and Judge Baum's Disallowance Order did not invoke the doctrine of claim preclusion as to the secured claim now asserted by River Flow. The Court further finds that River Flow's claim is enforceable solely against the Property. Debtor's Objection to the Current Amended POC filed by River Flow is denied.

**ORDERED**

**DATED AND SIGNED ABOVE.**

**To be Noticed through the BNC to:**
Interested Parties